a sentence within the guidelines to be reasonable. And while this case is not the ordinary case, as I looked over all of the district court's overrulings of the recommendations below, I realized that there's a common theme, which is they all involve areas in which a district court, there's no reason to think that a district court is in a better position than others on the issue. I start with the fact that there was a joint recommendation of the parties. You're arguing the substantive reasonableness of the sentence, right? Yes. And so the court varied downward by 41 months. So if we send the case back and the court makes specific articulable findings with regard to Mr. Sotelo's cooperation, the fact that he faces deportation to avoid sentencing disparities, he could get a higher sentence within the guidelines. He could get 168 months. There are some judges in the Southern District who've sent it back and they've got higher sentences. Yes, Judge, but I submit that I don't think this court... Not Judge Ruiz, but he could get a higher sentence if we send it back, right? I understand your statement that there was a downward variance here, but in reality, the way to look at the case, Judge, is you have a joint recommendation of the parties for a seven-year sentence. And the parties are in a pretty good position to judge. But didn't the government say that they didn't realize at the time when they made that recommendation that the PSI was going to come back with the information that it came back with? That's right. The PSI, because the defendant was on probation from a DUI dating back to almost ten years earlier, increased his criminal history category, the defendant's, from one to two. And the judge sensibly said, that doesn't make sense. And he said, I'm going to find that a variance is wanted only because the criminal history category somewhat overstates because he is on probation. So Judge Ruiz used his discretion on that, correct? Correct. Can I, speaking only for myself, suggest that I think this is the weakest of the arguments that you have? I'd be interested in hearing your affirmative presentation specifically maybe about the NCMEC report and the spreadsheet, and maybe some talk about Appendi and Alene and how they apply or don't apply to restitution awards. Judge, I'm happy to move on to restitution, but I do think it's important just very briefly to stay with the sentencing issue here. As I was saying, the rulings involve areas where there's no reason to think that a district court is in a better position than the parties on how long the defendant should be in jail. You have an agreement between the parties and can understand the complex. It's an agreement between the parties, but it's always with the understanding that it has to be approved by a federal district court judge, correct? Yes, Your Honor. Nevertheless, I submit a joint recommendation of the parties to a court is something that... There's judges in the Southern Deny a joint request. I don't know about that, Judge. Then let me turn to disparity. You have the prosecutor standing up and saying, seven years is where we usually are in these cases. Prosecutors generally know what they're talking about, and in this case... We understand all that. What do you have to say about the disparity? I wish... There's a recent decision on restitution from the Eighth Circuit, United States v. Evans, 48 F. 4th 888, in which the court talks about the medical costs that were sought as unduly speculative and insufficiently explained. We are... But I realize fully that this could very well be the first case in this court to address the new mandatory $3,000 minimum case, and I understand there are some important issues under that, interpreting that new statute, and they're laid out in our briefs. Unfortunately, because as was mentioned, the only evidence to establish that my client even had the images of the victims for whom restitution is sought is a spreadsheet without the name of the author, and so without any... That was produced after, as it happens, my objection during the hearing that there was no evidence, so I didn't have an opportunity to cross examine anyone about this, which is an addition of reliability to be able to say, no, this is not what it says. So you have no reliability here, a spreadsheet. So at the very beginning, we just don't have evidence that the victims for whom restitution is sought were the persons on the videos or photos in my client's cell phone. So we have that fundamental issue. After that, we can get into, if you like, the medical costs and the lawyers. Are you suggesting that the images, that the individuals who sought restitution and who they have the pink girl, they have series of images and they're named, they have a particular name, and the FBI keeps information on these and who the victims are as they identify who the victims are. Are you saying that your client did not have those images on his computer? I'm saying, Judge, I don't know whether he did or didn't. There's no evidence that he did. And if you want to enter a restitution order, you need to have evidence tying my client's cell phone, by the way, there is no computer in this case, and cell phone to these images. That's the first step. Then we can get into, okay, so these are the victims. How does one go about giving them restitution? What are the limits of restitution? How much proof is required? Which I'm happy to get into, but, and it's very, I think, very thoroughly laid out in the briefs, but we have that first step, which is, I've just said it, so I'm going to repeat it. Can I ask you a question? If we were to decide that the spreadsheet were not sufficiently reliable, what's the remedy? Is it a remand or additional fact-finding or? Judge, in the brief, no. I objected. I happen to have been the restitution defense counsel. I objected before the hearing. I said, government, if you want to recover for these victims, show me evidence that the victims were, in fact, on my client's cell phone. They didn't. The judge says during the hearing, give me a declaration from the case agent saying these were the images, and the government, instead of giving a declaration from the case agent, and there's a Department of Justice publication that says don't do this, provides a spreadsheet. You don't know who wrote the spreadsheet. There are numbers, dates. You don't know what it, and so, can't the case? Is the agent requester, Diane Lim, is that the agent who was in charge of this case? Honestly, Judge, I don't remember speaking, standing right here. That's the person who requested this information. That's what it says on the spreadsheet. I don't know. I don't know, Judge. But to answer Judge Nielsen's question, if you were to decide that the spreadsheet is inadequate, then under the Canty case, C-A-N-T-Y of this court and the Washington case, this court, the rule is once the government has met with an objection that there's insufficient evidence, we, the Court of Appeals, do not, do not send the case back for further findings. The government was on notice that it was supposed to produce evidence. It did not, and now we're not going to give them, not my words, probably not this court's invention either, a second bite at the apple. We're not going to do that, and I would. We do that all the time in restitution cases, where if there wasn't evidence presented or if it's not sufficient, we send it back for a further hearing on the matter. Well, I think, Judge, if you take a look. Are you saying that we never do that? I'm not saying you never do that, Judge, but I'm saying that it depends on the case. Are you saying that as a matter of law, it's improper? I'm urging you, Your Honor, to apply the Washington and the Canty cases, which are with settled law, in this situation where defense has made an objection, I don't know if in your cases there was an objection, has said specifically, you need to prove this, and this court says, no, I'm sorry, spreadsheet's not going to do it. Your own publication says you can't do it that way, and we're not going to give you a second bite at the apple. That's very straightforward, and it's very fair, by the way, just so there's a rule, as you know, that for me, for example. I just want to confirm, it's your position that this information that says that these images of certain series, that's what they're called, of actual, the victim's actual first name, so the Best Necklace series, the Lighthouse series, Pink Heart Sisters, Sweet White Sugar series, that those were not found on your client's cell phone? Those are series, Your Honor. I understand what they are. Right? We're talking about victims, individuals. Yes, the victims are in those series, and the series, instead of being named by the victim's actual name, are named by what they are known for in these videos, in these images. I don't know that, Judge. Well, that's what it is. I haven't seen those series. I don't know who the victims are, and I would like someone who has seen the series and knows the victims and can identify to say, yes, this victim is in that series. So can I just make sure I'm understanding? I thought that the spreadsheet was the piece of evidence that purports to connect individual victims to series, and your contention is individual victims to series. Short answer, no. Well, what about the fact that these victims filed impact statements, and there's also psychological examinations that were filed that talk about, for example, the victim Maureen, who's in the Lighthouse series, and it talks about Maureen, which obviously is an alias, and the victims, it's called the Lighthouse series. Are you saying that Maureen and the Lighthouse series was not on your client's cell phone? Your Honor, I'll answer what I understand to be your question. The psychologist has not seen the video. The psychologist spoke to this victim, okay? This victim knows and has identified herself as a person whose images are collected in these series, okay? That part I'm not sure of, Your Honor. I don't think the victim identified themselves as in the series. I don't see that in the evidence. There were two claims as to two of the victims by the government in its brief that the victims had identified themselves. You'll see in my brief, I take a look, I say, no, take a look at the document. They don't identify themselves. Ms. Bianco has requested, Ms. Bianco is the attorney, has requested this examination of Maureen because a primary perpetrator took images of her and her sisters while they were being sexually victimized. He distributed these images online, resulting in significant numbers of great detail about the sexual abuse and the images that were taken of this poor child. Your Honor, I understood you to be saying that's an attorney's statement? This is in the record, this is evidence, correct, that was presented to the district court judge and Judge Ruiz read all of these impact statements and he read all the psychological evaluations that were submitted because they were necessary for purposes of restitution. Your Honor, an attorney, an attorney cannot identify a client. That's not the role of an attorney in our system. This is from a psychological examination of the victim who is in the series, who has been identified in the series. This is one of many. I mean, there's many. There's Maureen in the Lighthouse series. There's Pia in the Sweet Sugar series. There's Violet in the At School series. There's Maria in the Best Necklace series. There's Erica and Tori in the Pink Heart series, sister series. There's Fiona in the Blues Pink series. Jenny in the Jenny series. Judge, let me try it by analogy. Let's say I go to see a psychologist and I say, you know, the 11th Circuit, they asked me questions. I need psychological help. Would that psychologist be in a position to say as a matter of evidence that I was before the 11th Circuit? No. He's not here. He's just hearing me, even assuming I said it was the 11th Circuit. In these cases, we don't even know what the victim said. There's just headings to these cases. The person who should be identifying, the person should be a case agent who's seen the videos and can put that victim in that video, not a psychologist whose focus is on dealing with the trauma that this person may still be feeling. Some of them, by the way, haven't yet gone to see a psychologist. Yes, because they're still children and they haven't been notified or told that they have images that have been taken of them. Right. All right, Mr. Cohn, we'll allow you to keep your reserve time for rebuttal and we'll hear from the government. Thank you. Ms. Hoffman. Good morning, Your Honors. Andrea Hoffman on behalf of the United States at council table with me as Catherine Coons, who tried the case in spreadsheet, which for convenience sake, because I stink at acronyms, I'm just going to call the report in the spreadsheet from here on. Your Honors, this factual presentation and the basis for which the court is relying on starts as early as the factual proffer. And if the courts go back to look at the factual proffer, which is in document entry 22 and on page three of it, the factual offer specifically says, which is agreed to obviously by the defendant, the forensic examination of this cellular phone revealed that the defendant received videos of children, some under the age of 12 years engaged in sexual activity between March 19th, 2018, and October 18th, 2020. The forensic examination, Your Honors, is the method by which the law enforcement takes a copy of the data that's on a cell phone in this case, as opposed to a computer. It's then the material that forensic examination is used by the agents here locally to do their investigation. And it's sent to the national center to generate this report. Let me see if you can resolve this concern now, because it's clear that the court can rely on hearsay evidence to I think what we're primarily concerned with is the spreadsheet itself. Do we know from the record who the author of the spreadsheet is? You don't know specifically. The agent is not named in the restitution that prepared it. The discussion of the case agent preparing it was held on the record, but not the name of the agent. And the spreadsheet doesn't refer to anything in the record to on the spreadsheet, does it? The spreadsheet, Your Honor, does refer to things from the record. It refers the hashtag informations that come on the spreadsheet. For example, that comes from the report. The dates on the spreadsheet correspond to things in the record? The dates from the spreadsheet correspond to what I just referenced, Your Honor. They come from the forensic examination. That's how we got the factual assertion in the for what the dates are. The forensic examination, which the defendants received, which defense counsel, former defense counsel reviewed entirely, have the dates. So, Ms. Hoffman, so just to be to understand, so when it says here under Maureen Lighthouse series, and it says 9-30-2020 or 1-15-2020, those are the dates that the images, I guess, were downloaded? They're the dates that they were received on his cell phone, Your Honor. Okay. So that's what created by means. I was unsure and looking at the spreadsheet, there are references to created. What does that mean? Yes, Your Honor. Created, the agent used the term created. It's when it's received. It's created meaning it was created on his cell phone. So a copy of that image is now sustained on that but it could be, and it's most logically, as was discussed in the sentencing and restitution hearing, a date it was viewed. Are the names of the victims on the spreadsheet? The names of the victims are on the spreadsheet, Your Honor. Jenny, Fiona, Erica, and Tori, it's next to their names. Jenny is the only one whose her series is the same name as the pseudonym name we use for that poor victim. The others have pseudonym names and series names, as Judge by their series name and their pseudonym name. The hashtags- Normally, the reason you do the series names is because unfortunately, there's a lot of victims that we don't know who they are. So you come up with a series name of what something that's descriptive in the video, in the images. And then when there's an identification of an actual victim, then you can put the victim with the series. Exactly, Your Honor. I mean, there are 130 series on this defendant's phone. We're seeking restitution. We sought restitution for seven of them. That's who's fully identified. As Judge Lagoa just said perfectly, unfortunately, often, the only identification we have initially is some graphic design, a designator for that series that would be unique from some other series. I'm looking at the spreadsheet. Maybe I'm looking at the wrong thing. I don't see names of victims on the spreadsheet. Your Honor, in the supplemental appendix in government's exhibit, it's at 63-2, excuse me, which is the very last page of the exhibit. And if you're looking at it, Your Honor, you'll see in this corner, there'll be one name. And then the first person is name and series are the same. It's Jenny. If you go down to the next one, you'll see Fiona is the pseudonym name for that young lady. And then underneath it is the series name for that young lady. How was the spreadsheet put together? The spreadsheet was taken from the report from the center and the forensic examination because the report doesn't presently, although we might ask them to, doesn't presently contain the dates. The data that was used to generate the report is that forensic report. There's a discussion in the transcript of restitution hearing that it was sent to them. It's then incumbent on that center to notify the victims. But so do, am I right or wrong? Feel free to tell me that I'm wrong. That the spreadsheet is sort of the hinge because it is the piece of evidence that links series to individual victims. It's not the only piece of evidence that links series to images. It does... Or series to individuals. I apologize, Your Honor. I misspoke. It does do that. But so do, as Judge Legault was saying, the 800 pages of information, not every page of the 800 pages of information that's in Exhibit 53, also filed under seal with this court. In there is the 800 pages submitted by the seven victims for their victims' claims. And as we recount in our brief, in those claims for Maureen, both her attorney and her doctor identify her as a victim in that particular series. For Pia, her attorney, her doctor and her mother identify her. For Violet, her attorney and her doctor. For Maria, her attorney. For Tori, her attorney. Both Maria and Tori have not yet had psychological exams because they either do not have enough restitution yet to be able... The families can't afford the more than $20,000 that it takes to even generate the psychological report, let alone any costs for help with the atrocious damages that they've received. So in a way, if maybe the victim impact statements are the real link, is the spreadsheet in effect just a summary of evidence that exists elsewhere? And if so, what does it do? What independent force does the spreadsheet have? The only useful thing that the spreadsheet does is it clarifies the dates of particular possessions of a particular image. Otherwise, everything else that's in it and that image, those dates come from the factual proffer as well. This defendant was under possess... Not possessing, let's use the more operative word, receiving child pornography for 17 months after the AVAA was passed. 17 months worth of his conduct is under this now mandatory restitution statute. And he acknowledges so in his factual proffer. Do I understand though that so from the factual proffer, what we have is a date range, a gross date range. And then I think I'm understanding now that they're separate in part from the spreadsheet. There might be evidence say in the victim impact statements that tie victims to series, but the spreadsheet maybe is the only thing that ties individual receipt  without question. So it is the government's position that judge Ruiz was without question able to rely on the spreadsheet and the report. And I would add in the victim witness statements to reach his conclusion that one, the victims were victimized on this cell phone of this defendant two, that he was a causal link to their harm and three, that they suffered. Well, two, that they suffered harm and three, that he was a causal link to that, to their harm. If there are specific questions, I'd be happy to keep answering them. Why did the government recommend these warrants? Your honor, the plea agreements happen before the PSI is prepared. Defense counsel and the defendant for the seven-year recommendation has a level 32 criminal history category, level 32 total offense level and a criminal history category one. The government is in a difficult position where you then get to a sentencing hearing and you have agreed in writing to a recommendation, or even if you just agreed orally, our obligation to honor our responses. So the government stood by the recommendation that it had made. Are you bound by that if the case goes back? You aren't, your honor. And because there's no facts in the record for why the government chose to stand with that one, I had not sought to try and present that to you. And judge Ruiz was concerned with the cache of pornography, which was a lot, 156,287 images. That's a lot, including videos. 12 times, your honor, he expressed that concern in this sentencing or restitution trans, excuse me, in the sentencing transcript, 12 times he said, I cannot countenance. I cannot agree to, I cannot see. I'm shocked that you, that we're making this sort of recommendation. And the fact that he was also a moderator. Correct. The role for the court, district court, there's no question that the number of images, the nature of those images, which included not just sadistic or masochistic images, but bestiality in images. And then the role of this defendant and the role, which again, in the factual proffer says that he was, he acknowledges that he was a moderator. And then in his PSI, which is unobjected to, so they're undisputed facts. He acknowledges that role of the dispute, the moderator is to receive and authorize the posting of links and then to distribute those links amongst other members in the group. And I think Judge Ruiz was also concerned with the images involving infants and toddlers. Unfortunately, the bestiality is infants and children as well, your honor. So yes, that was a significant factor for him. The judge specifically said on the record, I generally defer to recommendations. And the reason it's 10 years, not seven, are the specific facts of this case. In each instance, every concern that was raised by the defense at both the sentencing and the restitution hearing, the court specifically addressed one by one. It was an incredibly methodical sentencing and restitution hearing. There is no question that this court considered every argument presented in both facets by the defense counsel. Can I ask you two, frankly, unrelated questions, but before you sit down one, just to circle back briefly to the spreadsheet to make sure I'm understanding. I do understand that the conduct in question here sort of spans the enactment of this statute. That's significant, perhaps for the mandatory $3,000 number. So with respect to dates on which individual images were received, we do sort of need to credit the spreadsheet in order to know whether or not the mandatory $3,000 restitution figure applies to individual instances, right? Yes. Okay. Thank you. That was super helpful. Second, will you talk to me a little bit about Apprendi, Alene, and the mandatory restitution award? It just seemed like suddenly, you know, we have this case, Dorman, that says, look, Apprendi doesn't apply to restitution because there's no upper limit, there's no statutory max. But then comes Alene and says, oh, Apprendi concerns also apply to mandatory minimums, which post-ADAA we now have in restitution. So why is Alene not relevant here? There's a threshold question whether Apprendi and Alene apply to restitution at all, but just kind of help me think through that. I'm going to be doing this from the seat of my pants, Your Honor, because I will be perfectly frank. I did not think about that argument. Well, I don't want to put you on the spot. I mean, we could get supplemental briefing on it. I definitely do not want you to feel like you need to wing it. It was not intended to be a quiz show kind of gotcha thing. I appreciate that. And I hadn't thought about it. And to the extent that the court is going to rely on that as part of an analysis, I would ask for the opportunity to supplement. I mean, with our presiding judge's permission, it might be helpful to me just to get some supplemental briefing on that, and we can give you time after the OA to do it. Don't feel like you need to answer me now. Well, why don't we, if you could provide a supplemental letter to the court, no longer than three pages by next Friday, and then Mr. Cohn will have until the following Okay. All right. Do we have a... I don't see how you can object to something that the court wants, but okay. Go ahead. I feel like I've become a real judge. I've never had an objection. Do I get to sustain or overrule or something? I was going to say, are you sustaining or overruling, Your Honor? That might affect how I go. I'll overrule the objection. Well, we can always ask for supplemental briefing, Mr. Cohn. So, by next Friday, no more than three pages, Ms. Hoffman, and then the following Tuesday, Mr. Cohn, you can respond to the supplemental briefing. All right. In this discourse, my time has elapsed, but I don't want to walk away from the court without anything unanswered. So, although in past time, is there any other questions other than Aileen, which I will resolve by next Friday, I hope, Your Honor? Is there anything else I can address for the court? We have your argument. Thank you, Ms. Hoffman. Thank you, Your Honor. And Mr. Cohn, you've reserved some time for rebuttal. Thank you, Judge. On the sentence, I think it's important to realize that for all of the things that Judge Ruiz noted and that counsel repeated, this defendant got significant sentence enhancements under the guidelines. In other words, this was material that was already covered in the guidelines. There's nothing that made this case different. It's covered. And as counsel said, for this kind of case, the guidelines are regarded as outdated, and across the country, defendants are receiving lower sentences. So the question becomes, why does my client get a higher sentence based on exactly the same conduct that others are getting a lower sentence? And I think every defense counsel in the country would be, in the tone that I'm saying now, outraged. Speaking of outrage, I will tone it down, but I was on this one sort of taken aback by the questions that came on the restitution front, questions like, what is created by me? I mean, that's a good question, but that's a question defense counsel would ask a witness at a restitution hearing. What does that mean? Does that mean the date he received it, or does that mean the date it was created? Same other question. How was the spreadsheet put together? Your question, Judge. That's a good question for at a hearing of a witness. How is this put together? And it's important also to note, respectfully, that, you know, you might say, oh, it's corroborated by the statement, the 800 pages. Well, first, no, as Judge Newsom correctly elicited from counsel as to the dates which triggers this new statute, the only basis for triggering the statute is the spreadsheet, is those created by And I have looked at those 800 pages, and it's just, first of all, whether a lawyer really is the person to be saying, this is the victim, I don't think that's the role of a lawyer, but putting that aside, they do not. They just simply say a series, say a name. They are not, and it's understandable. They haven't seen the video. They don't know. They're not in a position to corroborate or not corroborate the psychologist and so forth. And in another case, yes, it might be a good idea for the government, a victim statement. So I'm kind of curious, is it your position that who would corroborate these images of these series? Well, it could be, as the government suggests, the victim. So the victim needs to watch the videos? Well, that's one way to do it. So the victim has to be re-victimized and watch the images? No, so let's say you don't want to go down that road. Some of them may, some of them may not. You can have people who know the psychologist, perhaps? I've seen the video. What in your mind, and maybe this is just a sort of elaboration on the same question, but what would have been sufficient to make this spreadsheet admissible, minimally reliable? What could the government have done in your view? Very good question, Judge. And it could have done what its own internal DOJ publication said. You call the witness to the stand. The creator of the spreadsheet? Preferably. And I mean, I'll continue. And then you asked, what is created by me? How is this spreadsheet put together? Is there any other information out there besides this spreadsheet that puts this victim in this video? And then Judge Lagoa might be surprised to hear, well, no, actually, we don't. Those lawyers, those psychologists, and even the victims themselves, they haven't seen the videos. They're not in a position to say, but I, as the KDH agent, watched the videos. I actually read the 800 pages. So I actually know what the record says. So please don't put words in my mouth. Apologies, Judge. But from your perspective, it would be sufficient for the case agent, him or herself, to get on the stand and say, I've watched the videos. These are the victims referenced in the series. See my spreadsheet. And subject him or herself to cross-examination. Exactly. All right. I think we have the argument, Mr. Cone. Thank you, Judge. That's all. Thank you. Thank you, Your Honors. I will file the petition. Thank you.